U.S. District Court
NORTHERN DISTRICT OF TEXAS
FILED

JUL 13 2015

CLERK, U.S. DISTRICT COURT
By _____ Deputy

Case 3:15-mj-00474-BF   Document 1   Filed 07/13/15   Page 1 of 7   PageID 1

# United States District Court
## SEALED
**NORTHERN DISTRICT OF TEXAS**

In the Matter of the Seizure of

Up to $56,370.34 in funds contained in Account #xxxxxxxxxx0074, in the name of GCJA, LLC at Capital One Bank.

**APPLICATION AND AFFIDAVIT FOR SEIZURE WARRANT**

CASE NUMBER:

**3-15MJ474-BF**

**I, Justin Wiggins, being duly sworn depose and say:**

I am a Special Agent with the Internal Revenue Service – Criminal Investigation, and have reason to believe that in the Northern District of Texas or elsewhere in the United States there is now certain property which is subject to forfeiture in the United States, namely:

Up to $56,370.34 in funds contained in Account #xxxxxxxxxx0074, in the name of GCJA, LLC at Capital One Bank

I believe that the property described is subject to seizure and that grounds exist for the issuance of this seizure warrant pursuant to 18 U.S.C. § 981(b) concerning property subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A). The facts to support a finding of probable cause are as follows:

See attached affidavit

Continued on the attached sheet and made a part hereof.    _X_ Yes    ___ No

_____
Signature of Affiant

Sworn to before me, and subscribed in my presence

at **Dallas, Texas**
   City and State

Date: July _13_, 2015

Paul D. Stickney
United States Magistrate Judge

_____
Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF SEIZURE WARRANTS

I, Justin G. Wiggins, being duly sworn, state as follows:

### INTRODUCTION

1. I am a Special Agent with Internal Revenue Service-Criminal Investigation (IRS-CI), and have been so employed for approximately 10 years. I am a graduate of the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. As part of the program, I attended six months of criminal investigation training, which included courses on criminal law, law enforcement techniques such as seizure, and search and arrest warrants. I have also attended continuing professional education classes covering various aspects of financial investigations, including money laundering and asset forfeiture. I have also received training on conducting investigations of drug trafficking organizations, gangs and organized crime organizations.

2. As a Special Agent, I am assigned to investigate financial crimes where violations of the Internal Revenue Code and related offenses have occurred, including criminal violations found in Titles 18, 26, and 31 of the United States Code. I have personally conducted or assisted in investigations of alleged federal criminal violations, including tax evasion, false claims, currency reporting, political corruption, real estate fraud, defense contract fraud, structuring, and money laundering. I have also participated in the planning, preparation, and execution of numerous search warrants.

3. This affidavit is intended to show that there is probable cause for the requested seizure warrant. It is not intended to be a complete statement of all known information of

1

evidentiary value, and it does not purport to set forth all of my knowledge of, or investigation into, this matter. This affidavit is based on personal knowledge that I have gained from the participation in this investigation, as well as information from other law enforcement officers/agents and other witnesses.

## PROPERTY TO BE SEIZED

4. This affidavit is made to obtain a seizure warrant for the following property:

   a. Up to $56,370.34[1] in funds contained in Account #xxxxxxxxxx0074, in the name of GCJA, LLC at Capital One Bank.
   b. Up to $50,946.43[2] in funds contained in Account #xxxxxxxxxx5174, in the name of RosaMaria Blanco at JPMorgan Chase Bank.

## LEGAL AUTHORITY FOR SEIZURE

5. Title 21, U.S.C. 841(a)(1) criminalizes the unlawful distribution of controlled substances (including methamphetamine), and Title 21, U.S.C. § 846 criminalizes any conspiracy to do so. All moneys and things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical, including methamphetamine, in violation of Title 21, U.S.C. § 846; all proceeds traceable to such an exchange; and all moneys used or intended to be used to facilitate any violation of Title 21, U.S.C. § 846 are subject to civil forfeiture to the United States of America pursuant to Title 21, U.S.C. § 881(a)(6).

6. Title 18, U.S.C. § 1956 criminalizes money laundering, including the "sting" provision set out in 1956(a)(3). All property involved in, or traceable to property

---

[1] This figures includes the purported drug proceeds laundered ($20,000.00), as well as the funds facilitating the laundering ($36,760.34).
[2] This figure includes the drug proceeds laundered ($17,040.00), as well as the funds facilitating the laundering and concealment of the drug proceeds ($33,906.43).

2

involved in, money laundering is subject to civil forfeiture pursuant to Title 18, U.S.C. § 981(a)(1)(A).

7.  Title 18, U.S.C. § 984 provides that, in any forfeiture action *in rem* in which the subject property is funds deposited in an account in a financial institution, the government does not have to identify the funds involved in the offense which is the basis for the forfeiture; it is no defense that those funds have been removed and replaced by other funds; and identical funds found in the same account as the funds involved in the forfeiture offense are subject to forfeiture. In essence, § 984 allows the government to seize for forfeiture identical property found in the same place where the "guilty" property had been kept. However, § 984 does not allow the government to reach back in time for an unlimited period; a forfeiture action (including a seizure) against property not directly traceable to the offense which is the basis for the forfeiture cannot be commenced more than one (1) year from the date of the offense.

## PROBABLE CAUSE FOR SEIZURE

8.  Since 2013, I have been assisting the FBI in a long-term investigation of drug trafficking in Dallas, Texas. This investigation has resulted in the recent indictment (Northern District of Texas) of over 40 individuals for violations of Title 21, U.S.C. § 846, as well as violations of Title 18, U.S.C. § 1956.

9.  The indictment charges Jose Amaya with violating Title 21, U.S.C. § 846 and Title 18, U.S.C. § 1956(a)(3)(B). According to the indictment, the drug conspiracy involving Amaya began in November 2014, continues to date, and involve the distribution of methamphetamine.

10. Additionally, the indictment charges Jose Guerrero with violating Title 21, U.S.C. § 846 and Title 18, U.S.C. § 1956(h). According to the indictment, the drug conspiracies involving Guerrero began as early as November 2012, continue to date, and involve the distribution of methamphetamine.

### Jose Amaya

11. During the investigation resulting in the indictment, federal agents acting in an undercover capacity as narcotics traffickers (UCAs) met with Amaya in Dallas, Texas. Specifically, on April 15, 2015, Jose Amaya met with UCA-1 and UCA-2 to discuss laundering proceeds of the UCAs purported sales of controlled substances/drugs. Previously, UCA-1 had told Amaya that UCA-2 launders his (UCA-1's) drug proceeds. During the April 2015 meeting, Amaya offered to help UCA-2 launder his clients' drug proceeds through his (Amaya's) trucking business, GCJA, LLC ("GCJA"). Amaya and UCA-2 agreed to launder $20,000.00 in money represented by UCA-2 as drug proceeds, in two separate transactions. Specifically, they agreed the UCAs would turn over $11,100.00 in drug proceeds to Amaya, in the form of a check written to GCJA; Amaya would then deposit the check into GCJA's bank account and give $9,100.00 in cash to the UCAs once the check has cleared. Then, $8,900.00 more in drug proceeds would be turned over to Amaya, in the form of a check payable to GCJA; Amaya would deposit the check and give $5,900.00 in cash to the UCAs once the check had cleared.

12. On April 20, 2015, the UCAs gave Amaya a check for $11,000.00 payable to GCJA. According to bank records, the check was deposited into GCJA's account (#xxxxxxxxxx0074) at Capital One Bank the following day, endorsed by Amaya.

4

According to bank records, the balance of GCJA's account before the check was deposited was $36,760.34. On April 24, 2015, two checks (#3592 and #3593) written on GCJA's Capital One account totaling $9,100.00 were given to UCA-1; the checks were signed by Amaya and payable to UCA-2's business.

13. On April 29, 2015, the UCAs gave Amaya a check for $8,900.00 payable to GCJA, LLC. According to bank records, the check was deposited into GCJA's account (#xxxxxxxxxx0074) at Capital One Bank, endorsed by Amaya. According to bank records, the balance of GCJA's account before the check was deposited was $40,307.80. On May 7, 2015, a check (#3603) written on GCJA's Capital One account for $5,900.00 was given to UCA-1; the check was signed by Amaya and payable to UCA-2's business.

## Jose Guerrero

14. During the investigation resulting in the indictment, federal agents acting in an undercover capacity (UCAs) met with Guerrero in Dallas, Texas. Specifically, on August 1, 2013, Guerrero met with UCAs to discuss the UCAs laundering the money he had made from drug trafficking; during the discussion, Guerrero told the UCAs that he maintains several bank accounts in his wife's name (RosaMaria Blanco) at JPMorgan Chase Bank and Wells Fargo Bank. On August 2, 2013, pursuant to an agreement with the UCAs, Guerrero provided $17,040.00 in cash earned from drug trafficking to a UCA; Guerrero told the UCA that his wife had been able to retrieve that amount from a safety deposit box kept at JPMorgan Chase Bank.[3] Guerrero also told the UCA that he would

---

[3] According to bank records, Blanco accessed the safety deposit box at JPMorgan Chase on August 2, 2013.

5

like a check from the UCA's business written to his wife after the $17,040.00 had been deposited into the business bank account.

15.  On August 7, 2013, pursuant to his agreement with the UCAs, Guererro was given a check for $17,040.00 payable to RosaMaria Blanco and written on a FBI undercover bank account. According to bank records, the check was negotiated by Blanco and deposited into JPMorgan Chase Bank account #xxxxxxxxxxx5174 on August 13, 2013; the account's balance at the time of the check's deposit was $33,906.43.

## CONCLUSION

16.  Based on the preceding information and my training and experience, I believe the property listed in paragraph 4(a) is subject to forfeiture pursuant to Title 18, U.S.C., § 981(a)(1)(A) and the property listed in paragraph 4(b) is subject to forfeiture pursuant to Title 21, U.S.C. § 881(a)(6) and Title 18, U.S.C., § 981(a)(1)(A). I therefore request seizure warrants for the property.

Justin G. Wiggins
Special Agent, IRS-CI

Subscribed and sworn to before me on this __13__ day of July, 2015.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE